Good morning, Your Honors. If it will please the Court, on behalf of Petitioner Amar Jit, Girish Sareen. This is a case for religious sanctuary. My client, in 2008, filed an affirmative application for asylum because he was unable to practice his religion in India. In 2007, he faced three horrendous incidents. The only documentary proof and corroborating proof provided in this case has been by my client. He's provided country conditions to show, in 2007, his religious group, Dera Sachasada, were confronted by Sikhs, beaten by Sikhs, and, in fact, killed by Sikhs. Counsel, could you help me on moving to his relatives 28 kilometers away? What's that all about, and how come it didn't come up initially? That was one of the things that made the IJ suspect that Jit wasn't telling them the truth. Thank you very much, Your Honor. That came up in cross-examination. While he was being cross-examined by counsel, he mentioned he relocated to some family members. It does not enhance his case. It doesn't contradict his case. And it's a classic case that this Court of Appeals has come out in three precedent decisions. The issue wasn't whether living with relatives, what is that, about 18 miles away, enhanced or detracted from his case. It was whether it was credible that he wouldn't think to mention it in an earlier statement. I don't believe it shows any adverse credibility. It doesn't state any reason to doubt his testimony. As I stated, it came out in this case in Ley v. Holder that when you are asked questions during cross-examination, you remember events that you didn't mention. And he mentioned it, that after his last incident of being beaten by the police and taken away and detained by the police, he went and relocated with any relatives. It does not help or show any inconsistency in his statement, Your Honor. Wouldn't that statement, though, undermine his case in a way? As I understand it, substantively, if he can relocate within the country to avoid any harm occurring, that does undermine his case. So wouldn't it be reasonable for the A.J. then to assume that this fact might have not, he might not want to disclose this fact because it might have affected his case substantively? That is not the reason the A.J. dealt with, Your Honor. He did not deal, she, I apologize, did not deal with resettlement or relocation. She viewed it as an adverse factor, as the Honorable Judge just mentioned. Him going, living with his family does not in any manner undermine his claim when the government of India couldn't protect him and arrested him and he was picked on by Sikhs, which he interchangeably uses with the words and terrorists and militants. He's an elderly gentleman with a rural education, maybe up to the 10th grade. The immigration judge allowed him to be led to certain facts. His living with relatives did not help him practice his religion. It just kept him safe from being attacked. He was unable to practice his particular religion, which is, he calls it Dara Satcharita, which is the truthfulness and it's a synthesis of all religions, Your Honor. Help me with the Akali Dal and Sikh thing. We get a lot of cases, or I guess we had a wave of them, now not as many, Sikhs from the Punjab and the police come, what is it, Khalistan movement? Is Akali Dal the regular political party and it's an offshoot that favors the secession and has some terrorist activities? Your Honor, I'd like to just keep two minutes for rebuttal, but to answer your question, the Akali Dal is a general generic term used by Sikhs, Sikhs political organization. This case has been dealing since the late 80s. For religion. Sikhism is a religion. Sikhism is a religion. Akali Dal is the, all Akalis are basically Sikhs. All Sikhs aren't Akalis. Akali was a political party. It's the Akali Dal. Akali is another word used synonymous for Sikhs. I see, thanks. Akali Dal is the political organization which has broken up in various subgroups. And this court has been dealing since the 80s and 90s with the secessionist or the separatist movement. And what is the Akali Dal Amritsar? That's the Akali Dal Amritsar is the separatist movement? Is the separatist organization that is allowed to function in India to create an independent state and has faced violence by the Indian state to suppress it. That is correct. Oh, I thought they were violent themselves. Maybe both. My client considers them to be terrorists, Your Honor. He considers them basically as a terrorist militant group. He labeled them as such and he used that term interchangeably. The Akali Dal Amritsar. Correct. But he didn't make a distinction between the Amritsar or the Akali Dal. He used the Akali Dal, the Sikh organization, as a terrorist group. And that I don't believe is adverse. The judge used that as adverse credibility. It isn't. But the biggest issue we have in this case is the speculation on the government and on the judge. He was treated by a doctor whose specialty was in being a pediatric doctor. And we provided corroborating proof. We provided that he owns a hospital. And they came and made a speculation that how could a pediatrician provide him emergency medical care even though he owns a hospital. And that's the basis for the adverse credibility finding. There is no medical report provided by the government or any opinion that a pediatrician could not see my client. As I understood that, though, it wasn't the question of whether he was a pediatrician. But it was the question that he didn't know that. And then when he was questioned about whether he actually saw this pediatrician, he sort of started backtracking and saying, well, there were other doctors at the hospital. So it did seem to call into question, you're right, he had a letter from the doctor. That seems pretty compelling. But then he sort of started backtracking, as I read it, to suggest that he wasn't sure whether that was actually the doctor he saw or whether it was another doctor. Could you speak to that? Yes. He was very clear that he saw Dr. Paul. Dr. Paul was the family doctor. He called him his family doctor. He mentioned him as a family doctor. Dr. Paul wrote a letter from his nursing home stating he has sufficient degrees, MBBS, DCH, but he's a specialist in pediatrics. He was testifying through an interpreter? He was testifying through a Punjabi interpreter. He's not that educated. And as I said, the judge allowed him to be led at certain times. He was always testifying through an interpreter. And he's an elderly gentleman. Do you think that there was some confusion then on his part? You're reading the record. Admittedly, it's not clear exactly how he was responding to these things. But ultimately, and then you can save the rest for rebuttal, what's the standard that we're looking at to determine whether the adverse credibility determination should be reversed? It is based on substantial evidence. How can you claim a pediatrician is not a medical doctor? That's the basis of the inconsistency and speculation that the decision of the government is based on, and it should be overturned. There's no basis for that. Thank you very much. Is his hometown a big city or is it a small town or a village? It's like a village. Thanks. Thank you very much, Your Honor. Joseph O'Connell on behalf of the Attorney General. Good morning, Your Honor. Thank you for having me. Your Honor, the record evidence does not compel the conclusion that Mr. Jitt testified truthfully during the immigration court proceedings. Let me ask you a question. It's been on my mind since I read the record in this case. When I read what the IJ said, it sounded like the main thing that influenced him is he thinks, why would an old man like you go to a pediatrician? That's right. And let me get to my question here. And I was thinking when my doctor left to go to the South Seas to wind up his career and I had to find a new doctor, no one would take a Medicare patient because Medicare pays half the market rate. And I wound up with a family practitioner who does mostly pediatrics and OB-GYN. And I thought, my gosh, I go to a pediatrician too, except when she's doing OB-GYN. The reason was, it's not that big a town, and it's all I could get. Why would that make me a liar if I told an IJ that? I think actually Judge Nelson answered that question. Why don't you answer it? Okay, I will. So the reason is because that was a reasonable explanation as to why you went to go see a pediatrician. I'm a pretty articulate fellow compared to some illiterate from the Punjab. But it makes sense. And so when Mr. Jitt was confronted with this, he said several times that he went to go see Dr. Paul. I read his explanation, and it sounded like he didn't even know the difference. It's like when other people in my town, they say I went to the doctor, and all they saw was a nurse practitioner. That would be a reasonable explanation. But what he did was he sort of went off narrative. You can see it from we only have a cold record, and so you can see it that he was sort of thrown by this question. It's at 211 and 212. But when he was thrown by this question, he goes off narrative. He didn't sound thrown. He went to the doctor. It's the town's so-called hospital. He doesn't know from pediatrician. It's a pediatrician. It's the doctor. He said he went to the doctor. That's the way he sounded in his testimony. When he answered the question, he said, well, that hospital has a lot of doctors.  He said, well, why did you see a pediatrician? He didn't say a lot. He said other. So that implies that it wasn't actually. When you look at the careful reading of the record, coupled with the fact that he's really testifying to an interpreter, he was never asked why he went to see a pediatrician. I would disagree with that character. Well, show me where he was asked that. I would say at 211 and 212. He said, why were you seen by a pediatrician? I can grab the record, too, here, if I have a second. The IJ and the BIA said he was asked to explain why his, why he saw a pediatrician. But the question, as I read it from the record, is why did you go see Dr. Paul? Because he's my family doctor. Is he a pediatrician? That's where it gets confusing. He was confused and unable to answer as to why Dr. Paul is a pediatrician and doesn't appear to really understand the distinction. Is Dr. Paul a pediatrician? He's my family doctor. That's why I went to see him. So there's some inferences drawn here that I'm not sure is in the record. I think the inferences actually go the other way, Your Honor, respectfully. So when he does imply that there are other doctors at the hospital, I think that implication is that he did go see other doctors instead of going to see Dr. Paul. I don't think you quite remember 211 and 212. Let me read to you what influenced me and you explain it to me. Ms. Park asks him, it looks like he's a pediatrician, is that right? And Jit says, what? I didn't understand. Right. And then they go back and forth on the letterhead. And then Park says, it says he's a child specialist, which seems to indicate a pediatrician. Is that right? Well, it's a hospital, and the hospital has other doctors in it as well. He doesn't say a lot of doctors, as you had accidentally mentioned before. It says other doctors. And then they go to the next page. It's a hospital. But you said you saw Dr. Paul. Yes, it's a hospital. It's Dr. Paul's hospital. You said you saw Dr. Paul. Is he a pediatrician? I don't know. I don't know. Right. So that's where I got the idea that he didn't know what a pediatrician was. What he knew was it's the local hospital. I went to the doctor. And that ends with, and who did you see? Dr. Paul. Right. I think the immigration judge made a reasonable, took a reasonable inference from that, that there's other doctors in the hospital, and that he got into this weird feedback loop where he's not giving a reasonable, if he doesn't know what a pediatrician is, he can say he doesn't know what a pediatrician is. He didn't say that. He just says, I don't know, I don't know. He doesn't even know the guy is a pediatrician. I mean, you see a guy in a white coat with a stethoscope around his neck, he's your doctor. That's who they assign to you. But, again, if your honors have an issue with that part of the credibility. The AIJ making that out to be why he's a liar. Okay, that's only one thing. So there's another thing. There's a couple more things I'd like to address, actually. So there's two allegations, there's two incidents that this asylum application is based on. So he has this July 16, 2007, where he says that I was beaten up by four Akali Dahl members. And at that point he says, well, why didn't you report it to the police? And he says, because the police are Akali Dahl members themselves, or supporters. And so that's going to be noteworthy when you actually take into account the fact that if you read his written statement, which leads us to the second inconsistency, the inconsistency between his written application and his testimony. So his testimony was that 11 days later he was detained by Indian police and beaten up. And the DHS attorney asked him, he said, did the Indian police accuse you of being associated with a particular terrorist organization? And he said, no. So at that point, the DHS attorney and the IJ referred to Mr. Jitt's written asylum application. At that point he says, and it's very short, so I'll paraphrase it. On July 27, police visited my home, arrested me, and took me for interrogation. They indicated that I had ties with Akali Dahl militants. I was released after days, plural, of beating and torture at the request of the local assistant mayor. So this conflicts with his testimony, number one. I don't know, not if he means by the militants, the wing of Akali Dahl that wants an independent Kalestan. Well, the reason he said that he didn't report the first- Fights for an independent Kalestan. Actually, just to answer that question, too, there's two factions. It's footnote two of our brief at page five. Akali Dahl is sort of this generalized parachute term for everything, overarching. But they're separated into two. So the Akali Dahl Man Party fights for the Kalestan. They fight for the separate state of Kalestan. The Akali Dahl Badal Party does not. They're opposed to that group. But in any event, when he said during the testimony that he was detained or he was beaten up by these Akali Dahl militants 11 days before, he was asked, why didn't you report this? He said, because the Indian police are Akali Dahl supporters. But at the same time, his written statement says, the police interrogated and questioned and detained me and accused me of being an Akali Dahl member. At the same time, this doesn't make any sense when you add it all up. So there's also the other statement that- In context, it seems like it was just a typo. I mean, that's a typo. That's a substantive typo. Instead of I, it should be it, right? Because that's the only way that that would really make sense. Like, why would- Which part, Your Honor? The I that you're relying on, the police beat and tortured him, indicating that I had ties with Akali Dahl militants. I think it's meant to be it, referring to the police, because he said that the police were pro-Akali Dahl, so it wouldn't make any sense that they're accusing him of being affiliated with Akali Dahl. It just seems like an obvious typo. So at no point did he suggest during the removal proceedings or on appeal or anything like that that this is a typo. What he suggested is that militants and Akali Dahl are the same thing and their terms are used interchangeably. He did not suggest that this is a typo in his written statement. This is a sworn statement, and he did not at any point suggest that this is a typo. Does that waive that argument then, if he hasn't suggested that? I mean, is there a waiver issue? Absolutely, it does. Again, this is the first time it's been brought up and it's brought up by the court. But, again, he never said that in the removal proceedings, in his appellate brief, or in the brief to this court. He has never said that this is a typo in his written statement. He said that he used Akali Dahl and militants interchangeably. And so when you take his written statement and compare it to his testimony, that doesn't make sense. And the last thing is, as Your Honor noted, so there's this omission from his asylum application. So he omitted this fact that for five or six months he said he had to flee his home and live 28 kilometers away with relatives. So he didn't say that in his direct testimony. It's an omission. He didn't say that in his asylum statement. And he didn't say it in his asylum application. And, in fact, this conflicts directly with his asylum application. It's at page 396, question 2. There's a part where it says, where did you live the last five months? And it says Nakodar. He wrote that affirmatively in his application. So this is an actual confliction with testimony and the written application. Is that either a larger town or a smaller village near his home village? I don't know, Your Honor. I looked it up on the map, but I couldn't tell based on the size of it. It is about 18 miles away, but I couldn't tell if it was smaller or larger. It's close. It's so close, about 18 miles away, that I figured it's probably either a larger town where one of his kids lives or a smaller village. I couldn't tell. There's nothing in the record that says it, and I couldn't tell from basically my search of Google Maps, which is outside the record. But I don't have the information for you. The other thing is you have to consider the fact that this man had a U.S. visa that had multiple entries on it. So he can come and go as he pleased. But he didn't. He waited until December, five months in India, before he came back to the United States. He never provided an adequate explanation as to that either. He just said he was waiting. I know you mentioned that in your briefing, and I couldn't see why it mattered. I mean, it takes a while to make the plans and get together the money for a big trip. He didn't say that. He didn't say that would be a reasonable explanation, but he didn't provide that. It wouldn't take that long for you or me or pretty much any of us here to plan a trip like that. But that would be a reasonable explanation if he gave it, which he did not. And so, just like Your Honor said with the pediatrician, which I know you disagree with, but Your Honor gave a reasonable explanation as to why that would be normal. If I drop on the floor of a doctor that's inspecting my ear, looks like a heart attack, I expect an otolaryngologist rather than a cardiologist to be taking care of me. So would I. I would take anything. I think you'll take whatever doctor you can get. But he never said that. The point is he never said that. He didn't even know the difference. I don't know if that evidence is in the record that he didn't know the difference. He just said, I don't know. He couldn't provide an out-of-the-box explanation. He said he didn't know what that was. When he answered, he said there are other doctors in the hospital. That was his explanation for the fact that he was seen by a pediatrician. We've got the record here over time. Thank you very much for your argument. Thank you. Thanks very much, Your Honors. Basically, what you have to do is go to the corroborating objective documentation over here. These incidents clearly occurred in 2007, and the documents show at that time his group, the Dero Satya Sauta, were being hunted, lynched by Sikhs throughout India, specifically in Punjab and the state of Haryana. That's the background information. He provided a letter from an assistant mayor who had to get his release. There's no dispute he saw a doctor. There's no dispute he was detained and he was released. He's corroborated that. Counsel, can I ask a question? Yes, Your Honor. We've been given three reasons why the adverse credibility determination should be supported on appeal. If we find that one of those reasons is questionable or may not be supported by the evidence, is that enough for your client, or do we have to find all three of those are unsupported by the evidence in order to remand this back to the IJ? Under the Real ID Act, you have to do a totality test, Your Honor. You've got to look at everything. So what would your response be? Would we have to find that all three of these were totally unreasonable and don't have any basis in fact, or would we send one back and say, hey, considering that we don't agree that there's evidence on this one, you need to relook at the question? The law asks you to look at the objective facts, and the objective facts show that the Akalis were killing and harming members of the Deira Satyasata. There is no dispute he's a member of the Deira Satyasata. The totality of all the evidence over here proves he was going to be harmed and had been harmed. Regardless of his testimony or any inconsistency that you wish to find, which there isn't any supported, the objective documents would be ---- Well, but that's my question is if, I mean, the IJ made an adverse credibility determination. So we have to review that, and my question is if we say that that adverse credibility determination was only supported by one of the three reasons or two of the three reasons, is that enough to then undermine the adverse credibility determination and get to the substantive question that you were just arguing? I'm intentionally not answering that question because the judge never looked at the corroborating documentation. You're meant to look at the corroborating documentation. You're meant to look at the objective proof if you don't believe the individual. That's the totality test under the Real ID Act. She didn't do it, neither did the BI. That's why it fails the adverse credibility finding. If I just stand alone and answer your question on those three reasons, yes, the government wins. But you have to look at the whole picture, and that's required under the Real ID Act. Thank you very much. All right. Thank you, counsel. The matter is submitted.
judges: Kleinfeld, Nguyen, Nelson